# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

SAMUEL GIBSON,

        Plaintiff,                CIVIL ACTION NO. 04-CV-74141-DT

vs.

                                      DISTRICT JUDGE GERALD E. ROSEN

COMMISSIONER OF
SOCIAL SECURITY,                MAGISTRATE JUDGE MONA K. MAJZOUB

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This Court recommends that Plaintiff's Motion for Summary Judgment be **GRANTED IN PART AND DENIED IN PART** and Defendant's Motion for Summary Judgment be **DENIED**. The decision of the Commissioner is supported by substantial evidence on the record.

## PROCEDURAL HISTORY

This is an action for judicial review of the final decision by the Commissioner of Social Security that the Plaintiff was not "disabled" for purposes of the Social Security Act. The issue for review is whether the Commissioner's decision is supported by substantial evidence on the record.

Plaintiff Samuel Gibson first applied for Disability Insurance Benefits (DIB) on July 14, 2000. (Tr. 46). Plaintiff's first application for DIB was initially denied on September 28, 2000. (Tr. 22). Plaintiff does not appear to have sought review of this decision, and it is not now before the Court.

Plaintiff filed a second application for DIB on February 4, 2002. (Tr. 49). Plaintiff also filed an application for Supplemental Security Income (SSI) on that date. (Tr. 350). In both of his February 4, 2002 applications, Plaintiff alleged that he had been disabled since December 1, 2001. (Tr. 49).

Defendant denied Plaintiff's February, 2002 applications on July 17, 2002. (TR. 27). Plaintiff requested review and received a hearing before Administrative Law Judge Angelo Nicchitta on June 28,

2004. (Tr. 357). The ALJ issued an opinion denying Plaintiff's claims August 26, 2004. (Tr. 12-16). The ALJ's decision then became the final decision of the Commissioner. 20 C.F.R. § 404.981. Plaintiff appealed the denial of his claims to this Court, and both parties have filed motions for summary judgment.

## **MEDICAL HISTORY**

Plaintiff was born on February 10, 1966. (Tr. 46). Plaintiff was admitted to the emergency room at Providence Hospital in Southfield, Michigan on July 10, 2000 with an ankle sprain. (Tr. 160). Michael Peters, M.D. gave Plaintiff crutches and an air splint. (Tr. 161). Plaintiff visited Providence Hospital again on July 20, 2000, complaining of stomach and ankle pain. (Tr. 154). Plaintiff left against the advice of the healthcare staff, stating that he had wanted pain medication, but no medical exam. *Id.*

On February 16, 2001 Plaintiff suffered blunt force trauma to the head. (Tr. 363). Plaintiff claims his current medical problems stem from the February 16, 2001 head trauma. (Tr. 364). Images of Plaintiff's cervical spine taken on February 16, 2001 show some mild reversal of the normal cervical lordosis, but were otherwise normal. (Tr. 170). On October 3, 2001, Plaintiff entered the emergency room at Detroit Receiving Hospital complaining of an upper respiratory infection and spider bite on in his left leg. (Tr. 168). Plaintiff was seen by Cynthia Hitch, M.D. (Tr. 169). Plaintiff did not exhibit any neurological deficits during Dr. Hitch's exam. (Tr. 167-169).

On February 1, 2002 Plaintiff entered Detroit Receiving Hospital and was examined by Jonathon Sullivan, M.D. (Tr. 164-166). Plaintiff reported to Dr. Sullivan that he had suffered one seizure several weeks after his head injury, and that he suffered persistent headaches with occasional dizziness. (Tr. 164). A CT scan of Plaintiff's head revealed a healed fracture of the right frontal

bone extending into the cranium and significant encphalomalacia of the frontal lobes. (Tr. 166). Dr. Sullivan placed Plaintiff on Dilantin to prevent any further seizures. (Tr. 166).

On February 14, 2002 Plaintiff was examined by Xi Guo, M.D. at the Harper Neurology Clinic. (Tr. 223-225). Plaintiff told Dr. Guo that he had begun passing out intermittently. (Tr. 223). Plaintiff said the these periods of unconsciousness were usually preceded by a headache, but refused to give a more detailed description. *Id.* Plaintiff exhibited decreased pinprick sensation on the left side of his face, and showed some hearing abnormality during Weber and Rinne testing. (Tr. 224). Dr. Guo recommended that Plaintiff remain on Dilantin, and suggested MRI and EEG studies of Plaintiff's brain. (Tr. 225).

An MRI of Plaintiff's brain taken on February 20, 2002 showed an area of encephalomalacia in the right frontal lobe with some reactive gliosis. (Tr. 221). An EEG performed on February 26, 2002 showed some abnormal activity in Plaintiff's brain, including possible epileptiform activity and one possible subclinical seizure. *Id.*

On March 16, 2002 Plaintiff was examined by A. Kumar, M.D., a psychiatrist. (Tr. 196). Dr. Kumar suffered from a depressive disorder and gave Plaitniff a Global Assessment of Function (GAF) score of 44 out of 100. (Tr. 197). In late March, 2002 Plaintiff underwent a physical residual function capacity assessment. (Tr. 200-207). The examining physician concluded that Plaintiff suffered from a possible seizure disorder and needed to avoid even moderate exposure to heights and moving machinery. (Tr. 205).

On April 16, 2002, Plaintiff was examined by Jagdish R. Shah, M.D. at the Harper Neurology Clinic. (Tr. 216). Dr. Shah concluded that Plaintiff's increasingly frequent "spells" were from a "possible seizure disorder" and directed Plaintiff to remain on Dilantin and observe seizure

precautions including no driving, working at stoves, work. *Id.* To pinpoint the cause of Plaintiff's disorder, Dr. Shah planned to have Plaintiff taper his anti-seizure medications and undergo several hours of inpatient EEG and video monitoring but noted that this could not happen for at least several weeks because of the length epilepsy clinic waiting list. *Id.*

Plaintiff appeared before ALJ Angelo Nicchitta on June 28, 2004. (Tr. 357). Plaintiff testified concerning his medical and work history. (Tr. 357-377). The ALJ did not take testimony from a vocational expert.

## STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). It is not the function of this court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even where substantial evidence also supports the opposite conclusion and the reviewing court would decide the matter differently. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**DISCUSSION AND ANALYSIS**

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff had to show that:

(1) he was not presently engaged in substantial gainful employment; and

(2) he suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) he did not have the residual functional capacity (RFC) to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R.. § 416.920(a)-(e). If Plaintiff's impairments prevented him from doing his past work, the Commissioner would, at step five, consider his RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. 20 C.F.R. § 404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

The ALJ concluded that Plaintiff had the residual functional capacity for unskilled sedentary work subject to a five pound lifting limitation. The ALJ concluded that Plaintiff had a severe medical impairment, was unable to perform any of his past work, but that he was not disabled because he retained the ability to perform a substantial number of jobs in the economy. In reaching his step 5 conclusion, the ALJ did not rely on the testimony of a vocational expert but instead applied the "Grid Rule" 20 C.F.R., Pt. 404, Subpt. P, App. 2, table no.1, § 201.27. The record clearly and consistently

shows that Plaintiff should remain on "seizure restrictions" for the forseeable future. Plaintiff's treating physicans and the social security examiners have consistently opined that Plaintiff should not drive or work near dangerous machinery or exposed heights. The ALJ did not explicitly include any seizure related limitations in his functional capacity assessment. Defendant admits that the ALJ should have concluded that Plaintiff suffers from non-exertional limitations, but argues that this error is harmless because "the inclusion of seizure precautions would not significantly affect the sedentary job base." Defendant argues that Social Security Ruling 85-15 provides a sufficient legal basis for the ALJ's step five finding.

Defendant's argument is foreclosed by *Hicks v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 757 (6th Cir. 2004). In that case the ALJ relied on grid rule 201.27 and SSR 85-15 to find that a claimant with exertional limitations and a seizure disorder was able to perform substantial work in the national economy. *Id. at 765*. The *Hicks* Court held that grid rule 201.27 and 85-15 did not provide substantial evidence to support the conclusion that a claimant was capable of performing substantial work in the economy where the claimant was exertionally limited to light or sedentary work. *Id.* The *Hicks* court found that there was insufficient evidence on the record to support the ALJ's step five finding of non-disability, vacated the step five portion of the ALJ's opinion and remanded the case to the Social Security Administration. *Id.*

There is no vocational or other evidence on the record in this case concerning Plaintiff's ability to perform work in the economy given his functional limitations.

## **RECOMMENDATION**

The Commisioner's decision at step five is not supported by substantial evidence. Plaintiff's Motion for Summary Judgment should be GRANTED IN PART AND DENIED IN PART, Defendant's Motion for Summary Judgment should be DENIED. The Commissioner's finding at step

five should be vacated and the case should be remanded to the Commissioner for additional proceedings consistent with this report and recommendation.

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: 10/05/2005                         s/ Mona K. Majzoub
                                                 MONA K. MAJZOUB
                                                 UNITED STATES MAGISTRATE JUDGE

### Proof of Service

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: 10/05/05                         s/ Lisa C. Bartlett
                                                 Courtroom Deputy